UNITED STATES DISTIRCT COURT
SOUTHERN DISTRICT OF NEW YORK

\----------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,    :
    :
        Applicant,    :
    : CASE NO. 15 MSC 246 (P1)
   -against-    :
    :
MICHAEL J. FORSTER,    :
    :
        Respondent.    :

\----------------------------------------------------------------x

**RESPONDENT'S SUPPLEMENTAL MEMORANDUM OF LAW
IN OPPPOSITION TO SECURITIES AND EXCHANGE COMMISSION'S
APPLICATION FOR AN ORDER REQUIRING COMPLIANCE WITH A SUBPOENA**

Of Counsel,

Paul S. Hugel, Esq.

CLAYMAN & ROSENBERG LLP
ATTORNEYS FOR RESPONDENT
305 Madison Avenue - Suite 1301
New York, New York 10165
(212) 922-1080 phone
(212) 949-8255 facsimile

INTRODUCTION

Respondent Michael Forster submits this supplement brief pursuant to the Court's September 18, 2015 order and in reply to the Securities and Exchange Commission's October 13, 2015 letter to Court.

On September 18, 2015, the Court heard oral argument on the Commission's motion to compel Respondent Michael Forster to produce documents in response to a subpoena ("the Subpoena"). During that argument, the Commission offered to provide a supplemental brief in response to the Court's expressions of incredulity concerning certain aspects of the Commission's motion. Rather than submitting the promised supplemental brief, the Commission has submitted a letter to the Court seeking to modify this Subpoena. In lieu of defending some of its more extreme positions (such as its insistence that Forster should be compelled over his Fifth Amendment assertion to identify lost or destroyed documents and provide a list of all of his bank accounts), the Commission now asks the Court to deem the Subpoena to have been modified in five ways proposed by the Commission and asks the Court to enforce the Subpoena as so modified.

It is fundamentally unfair and wasteful for the Commission to come to Court to compel Forster to respond to the subpoena it served on him, and then, after the motion has been briefed and argued, ask the Court to rule upon a different subpoena. Nevertheless, we will address herein why the Commission's proposed modifications to the Subpoena do not alter Forster's right to invoke his Fifth Amendment act of production privilege.

1

REPLY ARGUMENT

The Commission's proposed modifications to the Subpoena relate to three peculiar and obvious problems with the Commission's original subpoena, but do not address the fundamental issues raised by Forster. Even if the Court were to deem the Subpoena modified in the manner proposed by the Commission, Forster's act of producing documents in response to the modified Subpoena would still require him to provide testimony to which he is entitled to assert a Fifth Amendment privilege. Neither the "foregone conclusion" doctrine nor the "collective entity" rule would prevent Forster from asserting this privilege.

A.     The Proposed Modified Subpoena Would Require Forster to Give Testimony
        Through the Act of Production

As pointed out in our main brief, Forster's act of producing documents in response to the original Subpoena would have significant testimonial value. By producing the requested documents, he would concede the existence of the documents demanded, his possession or control over those documents, and the authenticity of his documents and communication.  Furthermore, as recognized by the Supreme Court in *United States v. Hubbell*, 530 U.S. 27 (2000), when an individual is served with a subpoena requiring him to use his own cognition to identify documents fitting certain broad descriptions, he is providing testimony for Fifth Amendment purposes through his selection of responsive documents. As observed by the Court, the processes of identifying, collecting and producing the documents in response to such a subpoena is "tantamount to answering a series of interrogatories asking a witness to disclose the existence and location of particular documents fitting certain broad descriptions." *Id.* at 41.

The modifications to the Subpoena proposed by the Commission do not change the fact that Forster's act of production would have testimonial value. The second and fifth modifications to the Subpoena proposed in the Commission's letter simply eliminate interrogatories embedded in the Subpoena which required Forster to identify to the Commission all bank accounts he controls and all responsive documents he has lost or destroyed. Forster could assert his Fifth Amendment privilege in response to these two items because they required him to give explicit testimony, not because of the implicit testimonial value of the act of production.  The third and fourth proposed changes have no effect on the act of production analysis. The only change to the Subpoena proposed by the Commission that would impact the testimonial aspect of the act of production is the first, which modifies the term "You" so that it no longer encompasses Forster's "nominees or alter egos." While this change would permit Forster to produce documents without having to state what companies are his alter ego and nominees, it does not come close to eliminating the testimonial aspect of his act of production.

Specifically, a change in the definition of the term "You" would not alter the fact that responding to the Subpoena would require Forster to use his own knowledge and cognition to identify what documents in his possession, custody or control are responsive to the 11 broad categories and sub-categories of documents called for by the Subpoena. "The testimonial aspect of production is not limited to the act of handing material over to the government– It also may include the custodian's exercise of discretion over which material to produce and which to omit." *United States v. McLaughlin*, 126 F3d 130, 134 (3d Cir. 1997).  As observed by Justice Kennedy, the choice of what documents to produce "can convey information about that individual's knowledge and state of mind as effectively as spoken statements." *Braswell v. United States,* 487 U.S. 99, 122 (1988)

3

(Kennedy, J., dissenting). As modified, the proposed Subpoena would still not identify any specific documents that Forster must produce (unlike the accountant's work papers at issue in *U.S. v. Fisher,* see Resp. Main Br. at p. 7).  It would still contain a definition of "concerning" that includes 18 ways a document or communication could be deemed to be "concerning" someone or something, and would leave it to Forster to determine what documents in his possession, custody, or control are responsive – thereby implicating that testimonial aspect of production recognized by the Court in *United States v Hubbell,* 530 U.S. 27 (2000).  It would still require Forster to state what documents exist and don't exist.  It would still require him to state what documents are in his possession. It would still require him to effectively testify as to the authenticity of his own records and communications.[1] The Supreme Court in *United States v. Doe*, 465 U.S. 605, 613 (1984) and the Second Circuit in *United States v. Fox*, 721 F.2d 32, 39-40 (2d Cir. 1983) expressly found that these testimonial aspects of production are sufficient to trigger Fifth Amendment protections.

The Commission's assertion that it is a "foregone conclusion" that the documents called for by the Subpoena exist and that Forster has possession of them is completely unsupported by the record. As observed by the Court during oral argument, if the Commission knew about the existence of documents, was able to sufficiently specify them, and could authenticate them from other sources, it would not be trying to get them from Forster.  As evidenced by the vagueness and breadth the Subpoena and the absence of any evidence to the contrary in its papers, the Commission does not know the universe of the documents it is trying to get from Forster and at best, is speculating about what

---

[1] *See e.g., John Paul Mitchell Sys. v. Quality King Distribs., Inc.*, 106 F.Supp.2d 462, 472 (S.D.N.Y. 2000) (holding that the act of production itself implicitly authenticates documents).

4

documents Forster may possess. "The inference we draw from [a] broad-sweeping summons is that the government is attempting to compensate for its lack of knowledge by requiring [the subpoena recipient] to become the primary informant against himself. *Fox*, 721 F2d at  38.[2]

Two of the Commission's proposed modifications to the Subpoena, which carve out records from four specific financial institutions from the scope of the Subpoena, demonstrate its lack of knowledge as to what documents exist. The conclusion is inescapable that the Commission has agreed to carve out records from these four specific institutions because it is already aware that these records exist and already has them or could easily get them from the institutions. What is left is essentially the opposite of a foregone conclusion – a subpoena commanding Forster to produce only the bank and brokerage records the Commission does not already know about.

B.      The Proposed Modifications to the Subpoena Do Not Implicate the Collective Entity Doctrine.

The modifications proposed by the Commission do not alter the fact that the Subpoena is directed to Forster in his individual capacity, and not as a representative of any collective entity. The proposed change in the definition of "You" to limit the term to

---

[2] The Commission's assertion during oral argument that it is a "foregone conclusion" that Forster possesses hundreds of text messages he exchanged with David Kavrell is laughable. The Commission's unsubstantiated assertion that it possesses evidence that Forster and Kavrell exchanged text messages between March 2014 and February 2015, even if true, does not establish that Mr. Forster has retained those text messages on his phone or even that Forster still possesses the phone on which those communications were made.

mean Forster individually and four companies, does not change the fact that the Subpoena was not served on Forster as the custodian of records for these companies.

The distinction between serving a subpoena on an individual and on someone as a corporate custodian is more than mere semantics. Indeed, it has constitutional implications. When the government serves a subpoena on a person as corporate custodian, it asks the person to produce documents as the corporation's agent. He is not asked to do anything that can be attributable to him personal. The Supreme Court recognized in *Braswell v. United States,* 487 U.S. 99 (1988), that a person so served, enjoys certain protections.

> The government conceded, as it must, that it may make no evidentiary use of the "individual act" against the individual. . . . The Government may not introduce into evidence . . . that the subpoena was served upon and the corporation's documents were delivered by one particular individual, the custodian. . . . Because the jury is not told that the defendant produced the records, any nexus between the defendant and the documents results solely from the corporation's act of production and other evidence in the case.

*Id.* at 118. The distinction between producing documents as an individual and as a corporate custodian can have profound consequences for a subpoena recipient. For instance, in *United States v. McLaughlin*, 126 F.3d 130 (3d. Cir. 1997), the court overturned a defendant's conviction for income tax evasion because the government had used his selection of documents in responding to a corporate custodian subpoena, as evidence against him.

The Subpoena served by the Commission is not directed to Forster as a corporate custodian. By proposing to modify the definition of "You" the Commission seeks to turn what is clearly a personal subpoena into one that could also be read to include corporate records held in a representative capacity. At best, this is problematic. It results in ambiguity as to who is being asked to produce the documents (Forster or the companies)

and confusion as whether responsive documents are being produced by an individual or corporate representative. It could cause complications with potentially harmful consequences to Forster should a prosecutor later seek to use Forster's production of these documents as evidence against him.  This is not some wild-eyed speculation, given that shortly before Forster received the Commission's subpoena, he was informed that he is the target of a federal securities fraud criminal investigation and that the Commission has indicated that it will share any information it obtains from Forster with other "other law enforcement agencies." (Commission Letter dated 10/13/15, n. 1). Given the stakes for Forster, the Commission should be explicit in what it is doing. If the Commission is in fact seeking to have the companies produce corporate records, the companies should be served with subpoenas and given the opportunity to appoint a custodian who can produce the requested corporate records without risk of self-incrimination.  *See, In re Two Grand Jury Subpoena Duces Tecum*, 769 F.2d 52, 57 (2d Cir. 1985). [3]

C.      An *In Camera* Review of Responsive Documents is not Required and Would Serve No Purpose

In order to assert the Fifth Amendment right against self-incrimination, the danger of self-incrimination must be real, not remote or speculative.  "When the danger is not readily apparent from the implications of the question asked or the circumstances surrounding the inquiry, the burden of establishing its existence rests on the person

---

[3] Given that the Commission states that two of the four companies for which it seeks documents are not even Forster's, the Commission's designation of Forster as corporate custodian is an invitation to additional litigation over Forster's status as a corporate agent. Although it was pointed out to the Commission during post-argument discussions between counsel that many of the Fifth Amendment issues raised by Forster could be avoided if the Commission simply served subpoenas on the entities, it has elected not to do so.

claiming the privilege." *Estate of Fisher v. Commissioner*, 905 F.2d 645, 649 (2d Cir. 1990). The corollary of this oft-cited statement is that when the danger of self-incrimination is readily apparent from the questions and circumstances surrounding the inquiry, no additional showing is required by the person seeking to invoke the privilege.

It could hardly be more obvious that Forster's risk of self-incrimination is neither remote nor speculative.  Forster has received a target letter from a United States Attorney's Office stating that he is the target of a securities fraud investigation. Hugel Dec. Exh. B. The Commission states in its brief that it believes that Forster is a stock promotor who has failed to disclose payments received by him and who has manipulatively traded in the stocks of issuers he is promoting. (SEC Main Br. p. 1.).  It states that the purpose of the Subpoena is to determine whether Forster and others violated federal securities laws.  The Subpoena seeks information related to Forster's promotion of securities and his interactions with people whom the Commission describes as co-conspirators. *Id.* at 5. It is expressly designed to gather evidence of crimes.

It is difficult to conceive how the Commission can argue with a straight face that "the danger of self-incrimination is not readily apparent on the face of the subpoena."  The Securities and Exchange Commission seeking to elicit information from Forster in connection with its securities fraud investigation constitutes the police seeking to question a suspect about the facts surrounding a crime they believe he has committed. It is hard to envision circumstances more fraught with the risk of self-incrimination and where it is more obvious that a person has the right to remain silent.[4]

---

[4] Even innocent people can be ensnared by ambiguous circumstances, and perfectly truthful and seemingly innocent statements could provide a link in the chain of evidence needed to prosecute. Thus, as famously stated by Justice Robert Jackson, "any lawyer worth his salt will tell the suspect in no uncertain terms to make no statement to police under any circumstances." *Watts v. Indiana*, 338 U.S. 49 (1949).

8

Moreover, since Forster's assertion of privilege is not based on the contents of any responsive document, but rather upon his act of production itself, the Commission's request that he be required to produce responsive documents for *in camera* review is mystifying. As pointed out by Judge Parker in *In re Hyde*, 1999 U.S. Dist. LEXIS 9892, *11-12 (S.D.N.Y), since the Court could not consider the contents of the documents in determining whether the act of production would be privileged, such a review would serve no meaningful purpose.

CONCLUSION

For the reasons stated herein and in its prior submission, Respondent Michael Forster respectfully requests that the Court deny the Security and Exchange Commission's motion to compel Forster to produce documents in response to the Subpoena over this Fifth Amendment assertion.

Dated:     New York, New York
           October 16, 2015

CLAYMAN & ROSENBERG LLP
ATTORNEYS FOR RESPONDENT

By:  _____
     Paul S. Hugel
     305 Madison Avenue - Suite 1301
     New York, New York 10165
     (212) 922-1080  phone
     (212) 949-8255  facsimile

9