```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------
SECURITIES AND EXCHANGE COMMISSION,

                Applicant,                15-mc-246

        - against -                       OPINION AND ORDER

MICHAEL J. FORSTER,

                Respondent.
------------------------------------
```

**JOHN G. KOELTL, District Judge:**

The Securities and Exchange Commission ("SEC") moves for an order requiring the respondent, Michael J. Forster, to comply with a subpoena for documents related to an SEC investigation into possible violations of the securities laws by Forster and his various alleged nominees. For the reasons that follow, the motion is denied and the Subpoena, either in its original or modified form, is quashed without prejudice to the ability of the SEC to serve a proper subpoena.

## I.

The SEC is investigating possible violations of the Securities Act of 1933 and the Securities Exchange Act of 1934 by Forster and what the SEC describes as Forster's various nominees, including SLO Holdings 3 LLC, OTC Media LLC, Gidapis LLC, and Kensington Marketing LLC (the "Nominees"); and by Monarch Bay Securities LLC, a broker-dealer registered with the SEC, and related, affiliated, or employed persons or entities.

See Enright Decl. ¶ 4.  The SEC believes that Forster, a stock promoter, has engaged in "pump-and-dump" stock schemes through the Nominees "without accurately disclosing the consideration issuers are paying him to conduct the promotions." Id. ¶ 6. The SEC "is also investigating whether Forster has been paying undisclosed compensation to broker-dealers, including, among others, Monarch Bay, to manipulatively trade in the stock of issuers he is promoting." Id.  The SEC is also investigating whether Monarch Bay and its agents and related parties may have violated Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, by, among other things "making false statements of material fact or failing to disclose material facts concerning, among other things, their receipt of undisclosed payments to manipulatively trade in certain securities." Id. ¶ 8.  The United States Attorney for the Northern District of Ohio has notified Forster that Forster is the target of a criminal investigation concerning violations of 18 U.S.C. § 1349 (conspiracy to commit securities and wire fraud) and other federal crimes.  See Hugel Decl. Ex. B (letter to Forster dated Sept. 18, 2014).

On February 18, 2015, as part of its investigation into possible violations of the securities laws, the SEC issued a subpoena to Forster with a return date of March 4, 2015. Enright Decl. ¶ 10; id. Ex. A, Subpoena In the Matter of SLO 3

2

Holdings LLC (NY-9227), ECF No. 13-1, Feb. 18, 2015 ("Subpoena").  The Subpoena requires Forster to produce seven categories of documents.  See Subpoena at 9-10.[1]  The seven categories are: (1) all documents concerning Harmon David Kavrell, the Managing Director at Monarch Bay, and all communications with or concerning him, including four enumerated subcategories listing what topics may have been discussed; (2) all documents concerning and communications with or concerning Monarch Bay, its employees, and agents; (3) all documents concerning and communications with or concerning COR Clearing LLC and its employees and agents; (4) all documents concerning and communications with or concerning Microcap Innovations LLC and its employees and agents; (5) all documents and communications concerning Forster's promotion of any security including but not limited to several enumerated subcategories of securities; (6) all documents and communications concerning Forster's trading in any security he has promoted; and (7) documents sufficient to identify all bank, brokerage, and other financial accounts controlled by Forster.  Id. at 9-10.

The Subpoena instructs Forster that, if documents responsive to the Subpoena "no longer exist because they have been lost, discarded, or otherwise destroyed," Forster "should

---

[1] The Subpoena is not paginated.  The page numbers refer to the pages of the ECF document.

identify such [d]ocuments and give the date on which they were lost, discarded or destroyed." Id. at 9.  The Subpoena also defines the terms "you" and "your" to mean "Michael J. Forster and any of your nominees or alter egos, including but not limited to SLO 3 Holdings LLC, Gidapis LLC, and OCT Media LLC." Id. at 7 (emphasis removed).  The term "concerning" as used in the Subpoena is defined to mean "directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, describing, analyzing or reflecting." Id. at 6.  The Subpoena does not identify any particular records that Forster must produce, such as a specific bank statement.

    Forster raised objections to the Subpoena with the SEC. First, Forster's attorney argued that several of the specific requests were, among other shortcomings, "unduly burdensome." Enright Decl. ¶ 15 & Ex. C at 1.  A few weeks later, because Forster had been designated a "target" in a criminal investigation and because the SEC was investigating Monarch Bay and SLO Holdings 3 for securities law violations, Forster asserted his rights under the Fifth and Sixth Amendments to the United States Constitution and refused to produce any document requested by the Subpoena.  See Enright Decl. Ex. E. at 1.  The

4

SEC responded that the privilege against self-incrimination could not be invoked in a blanket fashion.  In correspondence between the SEC and Forster's counsel, the SEC attempted to describe in greater detail the material sought by the Subpoena.  See Enright Decl. Ex. G at 2-4.  Forster continued to assert a blanket privilege.  Unable to resolve the impasse, on August 5, 2015, the SEC filed this action to compel compliance with the Subpoena.  See Enright Decl. ¶¶ 34-37.

On September 18, 2015, this Court, sitting as the Part I Judge, heard oral argument on the SEC's motion to compel Forster to produce documents in response to the Subpoena.  The Court questioned the breadth of the Subpoena, and the SEC agreed to submit supplemental briefing or narrow the Subpoena.  See generally Sept. 18, 2015 Tr. at 3-5, 42-45.

On October 13, 2015, the SEC submitted a letter to the Court enclosing correspondence with Forster over proposed modifications to the Subpoena.  See SEC Ltr., Oct. 13, 2015 & Ex. A (Sept. 25, 2015 Ltr. from SEC to Forster ("Subpoena Modifications")).

The SEC offered to modify the Subpoena as follows. First, with respect to the definitions of "you" and "your," the SEC stated that it would narrow the definitions to mean "Forster, SLO Holdings 3 LLC, OTC Media LLC, Gidapis LLC, and Kensington Marketing LLC."  Subpoena Modifications at 1.  In accordance

with these definitions, the SEC wrote, Forster would still "be obligated to produce all responsive documents that (1) he possesses in his personal capacity; and/or (2) he possesses on behalf of the entities SLO 3 Holdings LLC, OTC Media LLC, Gidapis LLC, and/or Kensington Marketing LLC."  Id.  Second, the SEC stated that it would strike the paragraph from the Subpoena that called on Forster to identify documents that no longer exist and the date on which they were lost, discarded, or destroyed.  Id.

Third, the SEC stated that it would modify the specific requests in several ways.  See id. at 2.  First, it would excuse compliance with Item No. 7 of the Subpoena, which had instructed Forster to produce documents sufficient to identify all bank accounts and other accounts under his control or held for his benefit.  Second, it would narrow Item No. 5 of the Subpoena such that Forster would not be obligated to produce account documents from Wells Fargo.  Third, the SEC stated that it would narrow Item No. 6 such that Forster "would not be obligated to produce account documents from E*Trade Securities LLC, Fidelity Brokerage Services LLC, or Monarch Securities LLC."  Id.

Forster's counsel insisted that if the SEC served Forster with either the original Subpoena or one with the proposed modifications, Forster "would continue to invoke his Fifth Amendment privilege in response to each request."  SEC Ltr.,

6

Oct. 13, 2015, Ex. B at 1.  The SEC then renewed its request to this Court to grant its application and order Forster's compliance with the Subpoena, SEC Ltr., Oct. 13, 2015, at 3, and Forster filed a brief in opposition to that motion.  Because the SEC no longer seeks to enforce the original Subpoena, the Court now considers whether the Subpoena with its proposed modifications passes constitutional muster.

## II.

The Fifth Amendment provides in relevant part that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. Amend. V.  Generally, the Fifth Amendment does not protect against compliance with a subpoena for pre-existing records because the creation of the records was not compelled.  See United States v. Doe, 465 U.S. 605, 610 (1984); Fisher v. United States, 425 U.S. 391, 409-10 (1976); United States v. Gendreau, No. 12-mc-303, 2014 WL 464754, at *2 (S.D.N.Y. Jan. 22, 2014); SEC v. Ryan, 747 F. Supp. 2d 355, 363 (N.D.N.Y. 2010).

However, the act of producing records may involve communicative aspects and compelling that communication may violate the Fifth Amendment privilege against compelled testimony.  Therefore, requiring compliance with such a subpoena may be precluded by the act-of-production aspect of the Fifth Amendment.  See Fisher, 425 U.S. at 410; Gendreau, 2014 WL

7

464754, at *2; Ryan, 747 F. Supp. 2d at 363.  Simply producing documents "has communicative aspects of its own, wholly aside from the contents of the papers produced.  Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the [person subpoenaed]." Fisher, 425 U.S. at 410; see also Gendreau, 2014 WL 464754, at *2; Ryan, 747 F. Supp. 2d at 363; United States v. Cianciulli, 2002 WL 1484396, at *2 (S.D.N.Y. July 10, 2002) (Katz, M.J.).

The Court of Appeals for the Second Circuit has explained the act-of-production privilege applies only where the act of production is, itself, (1) compelled, (2) testimonial, and (3) incriminating.  See In re Three Grand Jury Subpoenas Duces Tecum Dated January 29, 1999, 191 F.3d 173, 178 (2d Cir. 1999) ("Three Grand Jury Subpoenas 1999"); see also In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992, 1 F.3d 87, 93 (2d Cir. 1993) ("Grand Jury Subpoena 1992") (holding privilege applies only "(1) 'if the existence and location of the subpoenaed papers are unknown to the government'; or (2) where production would 'implicitly authenticate' the documents" (quoting United States v. Fox, 721 F.2d 32, 36 (2d Cir. 1983)); Gendreau, 2014 WL 464754, at *2.  However, production may not be refused if the government can demonstrate that it knows the documents' existence and location "with reasonable particularity."  Grand

Jury Subpoena 1992, 1 F.3d at 93; see also Fisher, 425 U.S. at 411.

The Supreme Court has held that compulsory compliance with a subpoena for documents is testimonial and violates the Fifth Amendment protection when it requires the "respondent to make extensive use of 'the contents of his own mind' in identifying the . . . documents responsive to the requests in the subpoena." United States v. Hubbell, 530 U.S. 27, 43 (2000) (quoting Curcio v. United States, 354 U.S. 118, 128 (1957)). The Supreme Court explained that a broad subpoena served on a witness triggered the act-of-production privilege because it effectively compelled the respondent's testimony:

> Given the breadth of the description of the 11 categories of documents called for by the subpoena, the collection and production of the materials demanded was tantamount to answering a series of interrogatories asking a witness to disclose the existence and location of particular documents fitting certain broad descriptions. The assembly of literally hundreds of pages of material in response to a request for "any and all documents reflecting, referring, or relating to any direct or indirect sources of money or other things of value received by or provided to" an individual or members of his family during a 3-year period . . . is the functional equivalent of the preparation of an answer to either a detailed written interrogatory or a series of oral questions at a discovery deposition.

Id. at 41-42. Assembling such documents would be "like telling an inquisitor the combination to a wall safe, not like being forced to surrender the key to a strongbox." Id.

9

**III.**

Forster argues that the act-of-production privilege applies to all of the documents and categories of documents the SEC seeks. He argues correctly that the breadth of the Subpoena at issue in this case, even as offered to be narrowed by the SEC, is like the subpoena *duces tecum* found to be covered by the act-of-production privilege in Hubbell. Responding to the Subpoena would require Forster to make the kinds of decisions as to responsiveness that the Supreme Court explained in Hubbell would trigger the act-of-production privilege.

The SEC responds that Forster's assertion of privilege is meritless for three reasons. First, it argues Forster's blanket assertion is impermissibly broad and that Forster must explain the privilege's application to each withheld document. Second, the SEC argues that the privilege does not apply because the existence and location of the documents is a "forgone conclusion," and the SEC will have other means available to authenticate them. Third, the SEC argues that Forster is obligated to produce all responsive corporate records he possesses as a representative of his companies under the "collective entity" doctrine. None of these arguments survive scrutiny.

First, a document-by-document analysis by Forster would not be useful to determining whether Forster has validly asserted

10

the act-of-production privilege, and the SEC has not explained how such a proffer would even work.  The act-of-production privilege does not focus on the content of the individual documents because it is not the content of the documents---which was not compelled---but the act of producing them that might trigger the act-of-production protection under the Fifth Amendment.  The content of the individual documents is not relevant to whether producing them would violate the Fifth Amendment.  As Judge Parker explained: "[B]ecause this Court cannot consider the contents of specific documents in determining the applicability of the act of production privilege, once the [respondent] has invoked the privilege, the Court is required to take at face value the [respondent's] assertions that the documents are incriminating."  See In re Hyde, 235 B.R. 539, 544 (S.D.N.Y. 1999), aff'd, 205 F.3d 1323 (2d Cir. 2000).  The Court "cannot require any offer of proof that the documents are, in fact, incriminating," because that would defeat the purpose of the privilege.  Id.

Second, the SEC has not "demonstrate[d] with reasonable particularity that it knows of the existence and location of" the many documents it seeks from Forster.  See Grand Jury Subpoena 1992, 1 F.3d at 93.  Even the proposed modifications to the Subpoena do not identify any specific documents Forster must produce; instead, the Subpoena seeks broad categories of

11

documents relating to Forster himself and to four corporate entities, SLO 3 Holdings LLC, OTC Media LLC, Gidapis LLC, and Kensington Marketing LLC.  See SEC Ltr., Oct. 13, 2015, at 2 & Ex. A at 1.

Moreover, the Subpoena leaves the original, expansive definition of "concerning" unchanged.  The Subpoena still seeks to compel Forster to determine if a document was, among other things, "substantiating," "analyzing," or "evidencing" each of the requested categories of documents. See Subpoena at 6 (definition of "concerning"), 9-10 (requests).  The categories include all documents concerning and all communications with or concerning Kavrell (Item No. 1), all documents concerning or communications with or concerning Monarch Bay Securities and its employees or agents (Item No. 2), all documents concerning and all communications with or concerning COR Clearing and its employees or agents (Item No. 3), all documents concerning or communications with or concerning Microcap Innovations and its employees or agents (Item No. 4), all documents and communications concerning Forster's "promotion of *any* security" (Item No. 5), and all documents and communications concerning Forster's "trading in *any* security [Forster has] promoted" (Item No. 6).  Id. at 9-10 (emphasis added).

The determination of which documents are responsive to the Subpoena would require the "extensive use of the contents of

12

[Forster's] own mind in identifying the hundreds of documents responsive to the requests in the subpoena." Hubbell, 530 U.S. at 43 (internal citation omitted). To comply, Forster would implicitly state what documents exist, are in his possession, and are authentic. See Hyde, 235 B.R. at 546 ("Because Hyde's production of the documents would implicitly authenticate them, the act of production privilege applies."). The compelled, testimonial, and incriminating nature of such a production is sufficient to trigger the act-of-production privilege. See Three Grand Jury Subpoenas 1999, 191 F.3d at 178.

The SEC's offer to rescind requests for information about Wells Fargo, E*Trade Securities, Fidelity Brokerage Services, and Monarch Bay Securities, see SEC Ltr., Oct. 13, 2015, Ex. A. at 2 (modifying Item Nos. 5 and 6 of the Subpoena), does not alter the analysis of the broad requests that remain.

The SEC argues that the Subpoena does not invoke the act-of-production privilege because copies of the sought-after documents exist elsewhere. Hence, the SEC argues that the existence of the documents is simply a "forgone conclusion." For example, the SEC says the existence and location of all documents concerning Monarch Bay Securities are known because Forster's trades with Monarch Bay are located with the Monarch Bay firm and can be authenticated through Monarch Bay's custodian. Furthermore, the SEC contends that it knows that

13

Forster regularly communicated with Kavrell by phone and text messages and that those communications are located in Forster's phone, which the SEC says it can authenticate by obtaining copies of the same communications from Kavrell.  The SEC also claims it knows of Forster's efforts to promote "any" security because it has obtained documents in the course of its investigation that show Forster operated a number of stock-promotion websites, see Enright Supp. Decl. ¶ 16, and those documents reside with Forster and with the websites' hosts.

These justifications are unpersuasive.  If the SEC knows of the existence of these documents, and it can point to other sources of the documents---such as Monarch Bay's custodian, Kavrell himself, and the hosts of Forster's websites---the SEC can obtain the documents from other sources without having Forster identify responsive documents, concede that he has them, and provide authentication.  The Fifth Amendment does not prevent the Government from collecting incriminating evidence against the respondent from other sources; it only prevents the Government from forcing the respondent to use his mind to select and produce incriminating documents himself.  See Fisher, 425 U.S. at 409 (The Fifth Amendment privilege "protects a person only against being incriminated by his own compelled testimonial communications.").  But it is only the Subpoena directed at Forster that can determine what documents he believes fall

14

within the broad categories of the Subpoena and what documents he maintained.

The cases the SEC cites to support its argument that the forgone conclusion exception applies to the documents it seeks are easily distinguishable.  For example, the SEC cites <u>United States v. Gendreau</u>, 2014 WL 464754, where the court enforced a subpoena for documents sought by the Internal Revenue Service.  But there, the Government had identified detailed information about a specific sought-after financial account, and the court concluded that the Government's requests were "not so broad and [did] not rest on speculation."  <u>See</u> <u>id.</u> at *5.

The SEC also cites <u>United States v. Hatfield</u>, No. 06cr0550 (JS), 2010 WL 1423103, at *1 (E.D.N.Y. Apr. 7, 2010).  But there, the court found that the existence and location of sought metadata was "*not* unknown to the government" and that the respondent's attorney represented in open court that the respondent "possessed the metadata and would willingly give it to the court for *in camera* review and explain to the court exactly what it means."  <u>Id.</u> (emphasis in original) (internal citation and quotation marks removed).

In addition, the SEC cites <u>In re Boucher</u>, No. 2:06mj91, 2009 WL 424718 (D. Vt. Feb. 19, 2009), which addressed whether requiring the respondent to produce an unencrypted version of his laptop's Z drive would constitute compelled testimonial

communication. However, in that case, the respondent had already accessed the Z drive at the request of a government agent, and the agent had already viewed the contents of the Z drive and ascertained that they may have included child pornography. The Government thus knew "of the existence and location of the Z drive and its files" and "providing access to the unencrypted Z drive [added] 'little or nothing to the sum total of the Government's information' about the existence and location of files that may contain incriminating information." Id. at *3 (quoting Fisher, 425 U.S. at 411).[2]

The same cannot be said about the SEC's Subpoena here. "[T]here is no reason to believe that the" extensive documents sought "are known by the government either to exist or to be in Respondent's possession," and the SEC cannot constitutionally compel Forster to confirm the SEC's intuitions. See Cianciulli, 2002 WL 1484396, at *3. Even the Subpoena as modified would require Forster to identify those documents fitting the SEC's descriptions and would be "tantamount to answering a series of

---

[2] The SEC also relies on two out-of-circuit cases, United States v. Sideman & Bancroft, LLP, 704 F.3d 1197 (9th Cir. 2013), and United States v. Ponds, 454 F.3d 313 (D.C. Cir. 2006). In Sideman & Bancroft, the Court of Appeals enforced a subpoena for boxes of documents where the Government knew of their existence and location and subpoenaed those boxes specifically. 704 F.3d at 1202-03. In Ponds, the Court of Appeals determined that the Government failed to show with reasonable particularity that it knew of the existence and location of most of the documents it sought. 454 F.3d at 324-25. Neither case helps the SEC here.

interrogatories" that would "disclose the existence and location of particular documents fitting certain broad descriptions." Hubbell, 530 U.S. at 41.

Third and finally, the SEC argues under the "collective entity rule" that Forster is obligated to produce all responsive corporate records he possesses on behalf of his companies because the firms themselves do not enjoy Fifth Amendment protection.  See In re Grand Jury Subpoena Issued June 18, 2009, 593 F.3d 155, 157-58 (2d Cir. 2010) (per curiam) ("Grand Jury Subpoena 2009").  The SEC contends that the modified Subpoena does not require Forster to identify the entities that serve as his Nominees or alter egos but only to produce documents he possess on behalf of four named entities and personally.  See SEC Ltr., Oct. 13, 2015, Ex. A. at 2.  This argument misses the point.  The Subpoena was directed at Forster personally, and he is required to produce his personal records.  More generally, the SEC served the Subpoena on Forster in his *personal* capacity and not as the custodian records for the listed companies.  The distinction is significant.  A corporate custodian acting in his representative rather than his personal capacity may not refuse production on Fifth Amendment grounds.  See Grand Jury Subpoena 2009, 593 F.3d at 158; McLaughlin, 126 F.3d at 133.  However, the Government may not make any evidentiary use of the act of production against the individual corporate representative.  See

17

Braswell v. United States, 487 U.S. 99, 118 (1988); McLaughlin, 126 F.3d at 133-34; see also Three Grand Jury Subpoenas 1999, 191 F.3d at 183-84 (holding act-of-production privilege available to former corporate officers where production would amount to compulsory, testimonial self-incrimination).

If the SEC wants the four named companies to produce corporate records, it can serve the companies themselves with subpoenas or direct them to appoint a non-party custodian who can produce the requested records.  See United States v. Lebanese Canadian Bank SAL, No. 11cv9186 (PAE), 2012 WL 2189188, at *2 (S.D.N.Y. June 14, 2012) (citing United States v. Earth, 745 F.2d 184, 189 (2d Cir. 1984).  But the SEC cannot compel Forster in his personal capacity to produce any documents simply because they relate to the four named companies.

## CONCLUSION

For the foregoing reasons, the SEC's application to compel Forster to comply with the Subpoena is denied, and the Subpoena is quashed without prejudice to the SEC's ability to serve a proper subpoena.

**SO ORDERED.**

**Dated:    New York, New York**
           **December 5, 2015**                    _____/s/_____
                                                        **John G. Koeltl**
                                            **United States District Judge**